Good morning, Your Honors. Howard Kristol for the Appellant, Center for Biological Diversity. I'd like to reserve three minutes for rebuttal, if I might. Please watch the clock. Thank you, Your Honors. Alaska is blessed with amazing biodiversity, and in the 1997 Improvement Act and other federal statutes, Congress mandated that the Interior Department protect that blessing on federal lands. This case is about whether the April 2017 joint resolution constitutionally changed that mandate. That resolution said that Congress, quote, disapproves the 2016 Refuges Rule, which prohibited certain hunting practices on National Wildlife Refuges, and that rule shall have no force or effect. But unlike all of the precedents that defendants rely on, the joint resolution does not say that it's consistent with prior law, or that it should apply notwithstanding other law. It does say, excuse me, it does say that it was promulgated under the Congressional Review Act. Mr. Kristol, the problem that I have with your argument is the power originally lies in Congress under the Necessary Rules Clause, does it not? In other words, if there had been no creation of a Department of the Interior, Congress itself would be overseeing the operation of federal lands and making necessary rules. Congress delegates, under the Enabling Act that created the Department of the Interior, the authority to establish needful rules and regulations. Since Congress is the ultimate repository of the power, why can't Congress subsequently modify or take back authority that it has delegated to the Department of the Interior, even if it's inconsistent with a prior congressional act that told the agency to do something else? I understand the Court's concern. My first answer is that Congress absolutely can do that. But my second answer is that Congress did not do that here. But you don't think that this, what is it? The joint resolution. The joint resolution under the CRA. Right. Yeah. Is in itself an act of Congress? No, I don't. That's not my argument, Your Honor. It absolutely was an act of Congress. It was passed by Congress. If Congress giveth, why can it not taketh away? So here's the question, Your Honor. Again, in all of the precedents that the defendants rely on, there are precedents that involve a question of the separation of powers between Congress and the executive, and there's also a whole series of cases that address separation of powers between Congress and the judicial branch. In all of those cases, Congress said something to the effect of, this new standard applies notwithstanding other law or is consistent with other law. For example, Your Honor. You're not challenging the authority, the delegation authority that Congress has given to the executive branch, are you? The Improvement Act and the underlying statutes? No, absolutely not, Your Honor. So if that's the case, if Congress gave the authority, why can't it modify it, curtail it, or even rescind it if it wants to? It absolutely can, Your Honor. And why didn't it do that under an act that's presented to both houses of Congress and signed into law by the President? So the question, Your Honor, here with regard to that specific point, is whether or not the joint resolution was promulgated under the Congressional Review Act, which then allows Congress and the defendants, the agency, to rely on the notwithstanding any other law provision. Could we put aside your argument, if you're getting into the argument, that there was some procedural error in enacting this particular law? So just putting that aside. So this, are you saying that this statute that they enacted, the joint resolution, was not clear enough to amend some of the delegation that they gave to the agency? I'm not sure I'd use the words not clear enough, but it didn't in fact amend it, because it doesn't say that it is either consistent with other laws or notwithstanding other laws. So your position is that unless an act of Congress that's changing prior delegation of authority, unless that says notwithstanding other laws or it says consistent with other laws, that that is ineffective to amend prior authority. Is that your position? That's correct, Your Honor. And what do you rely on? A long line of cases, Your Honor, including going back to Judge Tallman's question about the necessary and proper clause, the Robertson v. Seattle Audubon case, where Congress, excuse me, where the Supreme Court found that the law had been amended. It said that this new standard was consistent with other law. All of the cases the defendants cite, all our cases, including Stop H-3 and Apache Survival, all say this is consistent with or notwithstanding the Supreme Court's most recent cases on this topic. They say that, but which case says that if you don't say that, you have not made an amendment? Because we do have a long line of cases about implied repeal and the like. This doesn't appear to be an implied repeal. This seems to be a direct repeal of the regulation. Well, Your Honor, this would be the first case where a court has determined that Congress amends preexisting law where it sets a new regulation or says how a regulation should be applied or shouldn't be applied without saying anything about how it relates to other law. And the Supreme Court — Isn't that what the notwithstanding clause is? Exactly, Your Honor. It is. And that's why the connection between the joint resolution and the Congressional Review Act is absolutely critical to the defendants' argument here. Because if they're not — Let me take a common-sense approach to notwithstanding. Please. It means without regard to what we previously said in these environmental statutes, we are now enacting a new law that says with respect to the refuges rule, it is no longer of any force or effect. Right. Here's the — I understand, Your Honor, and here's the problem. I don't see the inconsistency. That's the problem. Here's the concern. We, of course, have a statutory argument, but putting that aside, with regard to that point in particular, the notwithstanding language is in 1996 passed by Congress saying notwithstanding any other law. The Improvement Act, the law that the defendants submit was amended by virtue of the joint resolution, was in 1997. And the question is whether — what power can Congress in 1996 give future Congresses? And the Supreme Court in the Chadha case, which involved actually many statutes where Congress had tried to empower future Congresses to exercise executive authority, the Supreme Court was quite clear that one Congress can't empower a future Congress to do something that's not constitutional. But a future Congress could come back and repeal this revision. Absolutely. And if the — Well, if that's the case, then where's the constitutional infirmary? If the — I think to answer your question, if the joint resolution had said itself — if the Congress in 2017 had said we are setting this new standard for regulation notwithstanding other law or consistent with other law, then we would have a very different case here. But what happens is that that gets — But it's a very narrow piece of legislation. I mean, I appreciate the importance of the rule. And I understand the concern of your client with regard to actually managing the resource here. But it's very, very narrow in the sense that it addresses a single rule that Congress disapproves of. I think that highlights our concern here because I think what the Supreme Court has made clear is there is a dividing line somewhere between what is legislative authority and what is executive authority. Going back to the first question I asked you, if Congress had never created a Supreme Court in the interior, it would be running all these refuges with, I guess, statutory rules and regulations. And it seems to me that all it's doing here is delegating and then modifying the delegation of the authority that it has always possessed under the Constitution. I think the Supreme Court's ruling in Robertson suggests otherwise because that case involved the management of federal resources. The Supreme Court's decision was not — it doesn't matter what's said here. Congress is just exercising its necessary and proper authority. What they said was, look at this — let's look at the provision. Let's look at what it says. It says, consistent with other law, here are the standards that apply. Congress latched onto that language. And our point is that this joint resolution does not contain that language. All it does is it contains a cross-reference to a 1996 statute, and we have a concern, both a temporal concern, about whether Congress had the authority in 1996 to prospectively allow future Congresses to abrogate other law. And then, of course, we have a statutory argument, too, that, in fact, if you look at the Congressional Review Act, it's not actually connected to the joint resolution because Congress didn't have the authority to revoke the refuges rule in a new session of Congress under Section 808 of the Congressional Review Act. Let me go at this a little bit differently. Sure. If there weren't any CRA — Yes. — could the Congress disapprove the administrative rule or regulation? That's a great question, Your Honor. And my answer is, yes, if it said, notwithstanding other law or consistent with other law, here's the new rule that applies. Only if it does that? Yes. Because in every precedent — It seems to me that the CRA is simply a process for review. And all we're looking at here, it's not a bar on what congressional actions can do in the future. I agree with that. It's simply a process of review. So, therefore, if Congress can disapprove this administrative rule or regulation, and that's what it did, why have we got a problem? Your Honor, if I could refer you to the Bousher case, where the court said — I did look at Bousher, but I don't think that answers my question. I think it does, Your Honor, when it says that interpreting a law enacted by Congress to implement the legislative mandate is the very essence of execution of the law. What is the joint resolution doing? It is interpreting the preexisting mandates of the Interior Department and saying, this particular regulation we don't think is consistent with those mandates. That's what the executive branch is for. And there's a line at some point where the legislative branch is now executing the law. And if we're — as a result of this case, if we're saying not only under the CRA, but in any way, shape, or form, Congress can just reach in and say, that regulation is okay with the statute, that regulation is not, we now have the legislative branch exercising executive functions. I'd also point the court to — Let me go one further. If the CRA is procedural, because it seems to me that you agree that it is, then how do I have the jurisdiction to look at your statutory claims? Your Honor, I would first direct you to the recent in-ray border infrastructure environmental litigation case, which — But just a minute. If I find this, that it is procedural, at that point, I'm just looking at it as a procedural situation, the statutory claim would really not be something that I'd have any authority to get into. I disagree, Your Honor. Because then it would be a political question. It's a question of understanding what our statutory claim is, Your Honor. Our claim is that the Interior Department was following a joint resolution that actually wasn't promulgated under the CRA. The bar on judicial review in the CRA is for actions taken under the statute. And just like in the border wall case, our claim is that the action and the implementation of this refuge rule — excuse me, implementation of this joint resolution — is ultra vires because it was an action taken outside of the authority of the Congressional Review Act. Are you — Is it your argument, because I'm having trouble following your argument. Are you saying that the joint resolution is facially unconstitutional? Yes. Absolutely, Your Honor. There's no construction of the joint resolution under our argument with regard to its relationship to the CRA, under which the court confined it to be constitutional. So it's facially unconstitutional because it violates separation of powers principles? Absolutely. Because it is an example. It's really the only example. I mean, the CRA process itself, of course, where Congress is trying to actually execute the law without using language like notwithstanding other law or consistent with other law, which it has always done. So enacting a statute that disapproves of a regulation is facially unconstitutional absent certain phrases? Yes. I mean, the Supreme Court has made clear that there are — and the defendants emphasized that there are no magical words, right, that are necessary for abrogating law. But here, our submission is there are no words at all, that all Congress is saying — There are words that are required to make that sort of statute constitutional. Am I understanding you correctly? Yes. Something along the lines of this — what we are saying now is consistent with prior law. It applies notwithstanding other law. You will find it. I was getting to earlier the most recent Supreme Court cases, Bank Marchesi and Patchett. Those are cases that involved a concern about the separation of powers between the Congress and the judicial branch. And in both of those cases, you were dealing with statutes where Congress had said notwithstanding other law, these standards apply. And the Supreme Court found in both of those cases that Congress had changed the standards over Justice Roberts' dissent. Isn't the effect of the rule, though, essentially to abrogate action by a federal administrative agency, the Fish and Wildlife Service, in favor of administration by the Alaska, whatever it would be, Department of Wildlife Fisheries? Correct. Why can't Congress simply say we are going to leave the management of this resource to the state of Alaska? Well — And we don't need the Department of the Interior acting in a way that is contrary to the way that Alaska may want to manage the resource. It absolutely can, Your Honor. The question is whether it did so here. Well, you're telling the agency that you have to rescind the refugees rule. Doesn't that have the effect of restoring or respecting state authority? That's certainly the defendant's position. Our position is that we still have on the books the 1997 Improvement Act and all of the other mandates. Those acts don't actually address this issue, correct? Excuse me? Those acts don't address this particular issue. Well, those acts direct the Interior Department to protect biodiversity on federal wildlife refuges, and the Interior Department was exercising that authority when it decided that it was necessary to prohibit these particular hunting practices on these refuges. How do we know that the way that the state is going to administer the resource now is going to be detrimental to the statutory command to preserve the diversity of the wildlife? That's a great question, Your Honor. And to me, that's the question that should be resolved in the way these issues should constitutionally be resolved. The defendants had brought a lawsuit over the refuges rule, and that question would be answered in that lawsuit. You want us to sit as a panel of scientific advisors and we're going to examine the scientific merits of the way the state is going to approach the problem versus Alabama? No, Your Honor. All I'm asking you to do is— Relieved. I have a very minor request, Your Honor, is that you act as constitutional scholars and decide that here is an example of where Congress has gone too far because it is actually executing the law without making any reference— I'm not so sure I follow the argument. If the fallback is if the feds don't do it, the state will, what's Congress managing other than telling the Department of U.S. Fish and Wildlife Service we don't like this rule? Again, I think that relates to what the rule itself was. The rule prohibited certain hunting practices within this federal sphere where we are in agreement that both Interior has delegated authority and Congress has supervisory authority. Pursuant to existing mandates, including the 1997 Act, and while I absolutely agree with you that there are several ways, including a lawsuit, including an act of Congress that would have additional language, for example, the one thing that our submission is that can't be done, is that Congress move into the executive sphere to say how regulations should be implemented under existing statutes. And the other thing I would point Your Honor to, and I see I'm running out of time, is the reenactment provision. Because if, in fact, by passing this joint resolution, Congress had amended the underlying statutes, which is what the defendants argue, the reenactment provision is superfluous. Why tell the agency you can't put the rule back in effect if, in fact, by putting this joint resolution in effect, you have somehow changed the statutes? That's the way in which Congress recognized it was doing something very different here and something that we — The rule is now invalid. Don't do this again. Yes. But when Congress passes a constitutionally proper amendment to law that says notwithstanding other law, that's already the case. That's my point, is the courts have been clear. The underlying law has been changed. And here, our submission is the Congressional Review Act is a very different animal. It seeks to sort of have it both ways in a way that we think is unconstitutional. Do you want to save the rest of your time? Yes, I would. Thank you. All right. We'll hear from McEverman. May it please the Court, Benjamin Schultz on behalf of the federal defendants. I'll be speaking for 15 minutes and my colleague from the Pacific Legal Foundation, David Dearson, will be speaking for five minutes on behalf of some of the other defendants. All right. Please watch the clock. Thank you, Your Honor. May it please the Court, Public Law 115-20 passed both houses of Congress and was signed by the President. Public Law 115-20 says in no uncertain terms that the Refuge's Rule, quote, shall have no force or effect. That language is clear. And while there may not be the certain magic words that opposing counsel is asking for in saying that it changes the law, there's nevertheless no question that Congress wanted the Refuge's Rule to, quote, have no force or effect. And that's all that the Court needs to do to resolve almost all of the issues in this case. Now, we think that because the rule is so clear that the Court doesn't even need to look at the preamble. But if, contrary to the Supreme Court's direction, this Court concluded that it did need magic words, we think you can find those magic words in the preamble because Congress said in the preamble that it was providing for congressional disapproval under Chapter 8 of Title V of the U.S. Code. And that's, of course, a reference to the Congressional Review Act, which makes clear that something under the Congressional Review Act is – takes effect notwithstanding any other provision of law. And I want to be clear, by the way, that while the Court doesn't need to get to that argument, if it does get to that point, that doesn't then tee up all the questions about whether or not this was actually enacted under the Congressional Review Act because by putting that in the preamble, Congress expressed its view that it was doing this under the Congressional Review Act. And whether Congress was right or whether Congress was wrong about that, Congress was clear that it thought that the effect of what it was doing was that its disapproval resolution had all of the effects that are specified of – under Chapter 8 of Title V of the U.S. Code. So however you want to get there, whether you want to just say that the public law takes effect of its own and Congress doesn't need to use magic words, which is what the Supreme any other provision of law. Either way, Interior is taking care that – or rather, the Executive Branch is taking care that the laws are faithfully executed because public law 115-20 is a valid law of the United States. I'd be happy to address any of the other issues about the Take Care Clause or about repeals by implication if the Court has any. Otherwise, I can move to other issues in the case. All right. Sure. So moving past the disapproval issues, the district court correctly found that the plaintiffs lack standing to challenge the reenactment provision. And we submit that that was correct, and that was because the only concrete injury that has been suffered in this case, or at least that has been alleged to have been suffered in this case, is that the center claims that it is less able to view wildlife. And assuming that that's a concrete injury, that injury cannot be redressed by its challenge to the reenactment provision because – I'm sorry? Because? Because it is speculative that even if it won its constitutional challenge to the reenactment provision, that Interior would then, in fact, reenact the rule. And at least in the absence of any indication that Interior currently wishes to reenact the rule or something substantially the same as it, then there's – it's not at least likely and it's only speculative that they will eventually be able to see the wildlife that they want to see. At least in this record, it's speculative, right? That's right. We're not saying that if they introduced other evidence or made other allegations that they couldn't make that showing. I think we're pretty skeptical of that. This is a statute – Public Law 115-20 was passed by both houses of Congress and signed by the President, and there's literally no indication that anyone can point to to show that – at least that I've seen – that Interior currently wants to reissue this rule. But if they wanted to make allegations and those allegations could withstand a 12B1 motion, then we could have a further debate as to whether at that point they had made the necessary showing to take this beyond speculative and into the realm of likely. If we find there is no standing here, is the case over? As to the constitutional – as to all their challenges to the reenactment provision, yes. I don't think anyone is challenging their standing, at least at this stage in the case, vis-à-vis the disapproval provision. I'd be – what was that? Understood. I'd be happy to go further into the reenactment provision if the court has – wants to talk about either ripeness or if the court has questions about it or the judicial review bar. But I don't think the court really needs to get into any of this. And if there are no questions, then the federal defendants would be happy to rest on our briefs. Let me ask you one question. And I only ask it just because it seems to me you're ready to rest, but it seems to me that you argued justiciability in two contexts, one, political question, and two, under 805, right? I don't know whether or not you would consider standing to be a justiciability issue, but if you want to treat standing as – Well, I'm talking about political question. So the rules of proceedings issue this court has interpreted to be a political question type issue. So, yes, you can certainly resolve some of these issues under the rules of proceedings clause of the Constitution. That's all I have. In fact, the political question decision would be decided first, right? There are a number of non-merits bases that the court can reach initially, and political question has traditionally been understood as one of those things that the court can do first. To the extent of opposing counsel is arguing that the joint resolution is not constitutional, are you arguing that that's barred by 805, the judicial review? We have not raised 805 as a defense to their constitutional arguments. We're only raising it as a defense to their other arguments. But we think the constitutional issues in this case are quite easy, and if the court has any questions about their constitutional challenges, I'd be happy to address them. Thank you. Thank you, Your Honors, and may it please the court, David Dearson on behalf of Pacific Legal Foundation. The district court's judgment should be affirmed because the statutory claims here are barred by Section 805 of the CRA and by the rules clause of the Constitution. This court does not need to decide the outer limits of Section 805 as the government agrees. The best reading of that section is that it precludes judicial review of actions or omissions by Congress, but does not similarly foreclose review of actions or omissions by agencies. But once again, and this is crucial, the court doesn't need to decide these outer limits, and that's because the center's claims turn on whether Congress correctly interpreted and complied with CRA procedures. And that inquiry is barred by Section 805 under either the interpretation that Pacific Legal Foundation has advanced or that of the Department of the Interior. It's also independently barred by the rules clause of the Constitution. As I understand the argument, the argument is that because the joint resolution was procedurally flawed, it's not under this chapter. It's ultra viris. Well, if you agree with that argument, then the claim is still barred by the rules clause of the Constitution. But I think that in order to decide the center's claims, you first have to look into congressional procedures and all of the preliminary steps that led up to the passage of Public Law Number 115-20, and those sorts of inquiries are barred by the rules clause and by Section 805 to the extent that they were taken under the CRA. And furthermore, as the state of Alaska has argued in its brief, this Fish and Wildlife Service's rule, the Refuge's rule, was not authorized in the first place. That's because Alaska is the primary manager of wildlife within its borders. That includes on federal lands, except to the extent that Congress precludes their management. And some of the claims that the center has made about the state's management, for example, that it allowed the shooting of bears and wolves from helicopters, some of those claims have been false. Now, regarding Section 805, not all claims under the CRA are barred by it, and this court should avoid suggesting otherwise. And I think this is clear when you consider the context of the legislation and its purpose. It was meant to rein in executive agencies. It was designed as a replacement for the legislative veto tool that was barred in INSV Chadha. So it would be odd if Section 805 permitted agencies to violate with impunity the very statute intended to rein them in. This reading of the legislation is also consistent, not just with its purpose, but with the legislative history. In a joint statement issued by bipartisan sponsors from both houses, they explicitly anticipated that the courts might have to decide, for example, that a rule is not in effect because the agency failed to submit it under Section 801 of the CRA. Once again, though, and as the United States agrees at pages 36 and 37 of their briefing, this court does not need to decide the outer limits of Section 805, and it should not. Wherever those limits are, this case falls within them because it asks the court to review whether or not Congress has properly interpreted and complied with its own procedures under the CRA. That much is barred by Section 805 and by the Rules Clause of the Constitution. If there are any questions, Your Honor. None. Thank you. Your Honor, we submit that when you go back and review all the precedents that defendants rely on, you'll see language like notwithstanding any other law, and that if Congress were to today pass a new joint resolution that says it is under the CRA well out of the 60-day window, that would be unconstitutional because it has absolutely no connection to the CRA. Now, Your Honor asked a question about procedural, and I want to make sure I'm clear about what you mean by procedural. Our argument is not that Congress didn't follow the right procedures as set forth in the CRA when it enacted the joint resolution. It followed those procedures, and they're in fact irrelevant to our argument. What I suggested was the CRA itself is procedural. It is, Your Honor, but — And, therefore, given that it is procedural, I'm having a tough time finding how I would go to the statutory claims. That was my question because I think the CRA is procedural. I understand. You agree with me that Congress can disapprove an administrative rule or regulation. Yes. And so, therefore, it seems to me that then the CRA is simply a process for review. The point, I understand, Your Honor. It's not a bar on future congressional actions. The point I was — And there's where I'm going. The point I was trying to make, Your Honor, is that if today Congress were to pass a joint resolution and say it's under the CRA, that doesn't make it under the CRA. The CRA itself has procedures involving the window of opportunity for when a regulation can be overturned. And our statutory argument is that if you look, it's a complicated one. It involves several provisions. But if you look at them together, you will see that this is a particular So these hunting rules are a particular exception where Congress said that the rule goes into effect regardless. The agency submitted the rule under 801 to Congress. Yes. That's correct. So without regard to whether or not it was effective on the date that the rule was promulgated, by virtue of the fact that the agency did submit it for review, why doesn't that trigger application of the CRA procedure? It turns on what the words in accordance with under Section 801D mean. They're unique words that are not used elsewhere in the statute. Isn't that a statutory challenge that Congress expressly took our jurisdiction away from in 805? That goes back to the border wall case where the Ninth Circuit said that if your challenge is that the agency hasn't actually acted under the statute, then the court has to look at the ultraviarious challenge, has to look at the statute to see whether or not — in that section 109A and B, and decided that actually Congress was acting under that statute — excuse me, the agency was acting under that statute. Here, what we're asking the court to do is to look at the statute to figure out whether or not Congress was — excuse me, in the interior department is acting pursuant to a constitutionally enacted joint resolution by virtue of its relationship to the Congressional Review Act. But what you're really asking us to do is to determine whether Congress followed its own rules. And that's — No. No. I understand — I understand your concern, but that's not — that's not what we're asking. We're asking you to look at — look at the statutory scheme. I mean, Congress can give us jurisdiction — Yes. — and take our jurisdiction away. Yes. And that — I'm with him on that. Yes. I mean, that's what 805 purports to do. Right. Right. Again, I urge you to look at that border wall case, because I think that's exactly — the same concern would be there, is that — because Congress had removed review by the agency of decisions made under that statute. And with the — excuse me — what the court said, the Ninth Circuit said in that case, is that we have to look beyond that, because the allegation — the Congressional Review Act comes up as a defense. That's also the leasing gang case that we rely on. That's all that you're talking about. It might be what I did. Yes, Your Honor. The — Well, I — their — their opinion didn't last very long. No. No. I'm sorry, Your Honor. Not — I — I'm sorry, Your Honor. I'm confused about what your opinions are. This is 9-15, F-3rd at 12-13. This is the one that came out earlier this year, Your Honor. All right. I wasn't sure whether you were on that panel. Yes. It didn't last very long. You're over your time. Yes, Your Honor. Thank you. I do want to talk about why the reenactment provision is not justiciable, but I see that I'm over my time. So, thank you. All right. Thank you, counsel. The case of Center for Biological Diversity v. Bernhardt is submitted, and we're adjourned for the day.
judges: Tallman, Ikuta, N.R. Smith